NOT DESIGNATED FOR PUBLICATION

No. 122,168

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

ZACHARY R. TREVITT,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; ERIC WILLIAMS, judge. Opinion filed November 20, 2020. Reversed and remanded with directions.

*Kasper Schirer*, of Kansas Appellate Defender Office, for appellant.

*Lance J. Gillett*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before ARNOLD-BURGER, C.J., MALONE, J., and WALKER, S.J.

PER CURIAM: Zachary R. Trevitt appeals the extension of his probation, arguing that it violated K.S.A. 2019 Supp. 21-6608(c)(8) because he will now spend more months on probation than the length of his underlying prison sentence. We find that the district court extended Trevitt's probation term beyond the statutory limit allowed under K.S.A. 2019 Supp. 21-6608(c)(8). We therefore reverse the district court and remand for the imposition of a shorter one that conforms to K.S.A. 2019 Supp. 21-6608(c)(8).

1

Trevitt pled guilty to four crimes, three felonies and one misdemeanor. On January 20, 2017, he received concurrent prison sentences of 64 months, 8 months, and 8 months for the felonies, the middle gridbox number for each crime under the sentencing guidelines. He also received a one-year jail sentence for the misdemeanor offense that is not relevant to this appeal. After imposing the prison sentences, the district court suspended them and ordered Trevitt to serve a 36-month probation term instead.

Just over two years later, Trevitt stipulated to probation violations for drug use and not reporting to his probation officer. The district court imposed a short jail sanction for the violations but did not extend his probation. Some months later, Trevitt admitted to more violations. The district court addressed the latest violations at a hearing in October 2019—about three months before Trevitt's probation was set to end. This time, along with another jail sanction, the court extended his probation 36 months from the hearing date. With the extension, Trevitt's probation will now end in October 2022, roughly 33 months past the original end date and 69 months after sentencing.

Trevitt appeals the order extending his probation for 36 months.

ANALYSIS

Trevitt's sole argument on appeal is that the district court extended his probation by more than Kansas law allows. His argument hinges on a dispute about the meaning of K.S.A. 2019 Supp. 21-6608, the statute governing probation extensions.

However, before diving into the disputed statutory language, we must determine if we may even consider Trevitt's contentions. Trevitt did not raise his statutory argument at the extension hearing in the district court. A party usually cannot raise a new claim for

the first time on appeal. See *State v. Godfrey*, 301 Kan. 1041, Syl., 350 P.3d 1068 (2015). In his brief, Trevitt offers several reasons why he believes we should take up and rule on his new statutory argument.

The most compelling reason Trevitt offers in support of our retention of his case is his contention that his sentence is illegal. Courts may correct an illegal sentence at any time—even in a challenge raised for the first time on appeal—so long as the defendant is still serving the sentence. K.S.A. 2019 Supp. 22-3504(a); *State v. Hambright*, 310 Kan. 408, 411, 447 P.3d 972 (2019). An illegal sentence includes one that "does not conform to the applicable statutory provision." K.S.A. 2019 Supp. 22-3504(c)(1). Trevitt's argument fits that description; he says that his sentence is illegal because it violates K.S.A. 2019 Supp. 21-6608's limits on the permissible length of probation extensions. We may therefore consider his claim even though he did not raise it below. E.g., *State v. Collins*, 303 Kan. 472, 473, 362 P.3d 1098 (2015) (reviewing new claim that judge ordered more probation time than K.S.A. 2011 Supp. 21-6608 authorized for defendant's crime).

The legal rules applicable to Trevitt's claim are straightforward. We exercise unlimited review over whether a sentence is illegal. The same standard applies to any statutory interpretation required to determine whether a sentence is illegal. *Collins*, 303 Kan. at 473-74. The touchstone of statutory interpretation is legislative intent, which governs if courts can discern it. To do so, courts start with the ordinary meaning of the statute's plain language. If the text is unclear, courts may also employ other tools to decipher legislative intent, including canons of statutory construction and legislative history. *In re Joint Application of Westar Energy and Kansas Gas and Electric Co.*, 311 Kan. 320, 328, 460 P.3d 821 (2020).

Trevitt contends that his sentence was illegal under K.S.A. 2019 Supp. 21-6608, which governs the length of probation periods. He focuses on a clause in subsection

(c)(8) about probation extensions: "Such extensions may be made for . . . the maximum period of the prison sentence that could be imposed." That language, he argues, caps the total time spent on probation—including extensions—at the length of the prison sentence imposed (here, 64 months). With the extension ordered by the district court, Trevitt's probation will now end about 69 months after sentencing. Because that exceeds the K.S.A. 2019 Supp. 21-6608's cap on total probation time, Trevitt says it must be vacated.

The State disagrees. In its view, K.S.A. 2019 Supp. 21-6608(c)(8) caps probation time based not on the sentence imposed but on the most prison time the district court *could have* imposed at sentencing. In the State's interpretation, to calculate that maximum sentence requires taking the highest possible gridbox number for each felony and adding them together, which could occur if the district court had chosen to run Trevitt's sentences consecutively. The high numbers for Trevitt's felonies were 68 months, 9 months, and 9 months. So, as the State sees it, the district court could extend probation until 86 months after sentencing and thus did not violate K.S.A. 2019 Supp. 21-6608 by only extending it to 69 months after sentencing.

The key provisions at issue here are the last three paragraphs in K.S.A. 2019 Supp. 21-6608(c), which deals with the length of probation (and other nonprison dispositions) for certain felonies:

> "(6) except as provided in subsections (c)(7) and (c)(8), the total period in all cases shall not exceed 60 months, or the maximum period of the prison sentence that could be imposed whichever is longer. Nonprison sentences may be terminated by the court at any time;
> "(7) if the defendant is convicted of nonsupport of a child, the period may be continued as long as the responsibility for support continues. If the defendant is ordered to pay full or partial restitution, the period may be continued as long as the amount of restitution ordered has not been paid; and

"(8) the court may modify or extend the offender's period of supervision, pursuant to a modification hearing and a judicial finding of necessity. Such extensions may be made for a maximum period of five years or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the original supervision term." K.S.A. 2019 Supp. 21-6608(c)(6)-(8).

To understand the statute requires us to consider each subsection in turn.

Subsection (c)(6) comes first and states a general rule: The total probation period cannot exceed the longer of "60 months[] or the maximum period of the prison sentence that could be imposed." K.S.A. 2019 Supp. 21-6608(c)(6). But the introductory clause preceding that language signals that the general rule has exceptions—it applies "except as provided in subsections (c)(7) and (c)(8)." K.S.A. 2019 Supp. 21-6608(c)(6). So if one of those provisions applies, total probation time *could* exceed the greater of the two values mentioned in subsection (c)(6). Under subsection (c)(7), for example, a court could continue probation for "as long as" a person still owes restitution, even if doing so causes probation to go past the general limit in subsection (c)(6). K.S.A. 2019 Supp. 21-6608(c)(7). E.g., *State v. Gordon*, 275 Kan. 393, 394-96, 66 P.3d 903 (2003) (affirming in two cases extensions past the cap for unpaid restitution).

The other exception to the subsection (c)(6) general rule, described in subsection (c)(8), works the same way. Its first sentence authorizes modifications and extensions after a hearing and finding of necessity. Then the second sentence contains the key language disputed by the parties here: "Such extensions may be made for a maximum period of five years or the maximum period of the prison sentence that could be imposed, whichever is longer, inclusive of the original supervision term." K.S.A. 2019 Supp. 21-6608(c)(8).

As we have noted, the parties offer opposite interpretations of this phrase in K.S.A. 2019 Supp. 21-6608(c)(8): the maximum period of the prison sentence that could

5

be imposed." Trevitt says that phrase refers to his 64-month prison sentence, the maximum sentence the district court could impose if it revoked his probation. See K.S.A. 2015 Supp. 22-3716(c)(1)(E) (allowing district court to require probation violator to serve "the sentence imposed, or any lesser sentence"). The State counters that the maximum period language refers to the longest sentence that the district court *could have* imposed if it had run the prison terms consecutively and used the high gridbox numbers. Measured that way, the district court could extend probation by up to 86 months (and thus did not err when it extended probation for much less than that amount). Although both readings are plausible, Trevitt's interpretation prevails for two reasons.

The first reason is the reenactment rule. Courts charge the Legislature with knowledge of existing law. So when an amendment changes the statutory language, our courts presume that the Legislature intends a change in meaning, too. *Gordon*, 275 Kan. at 405. This presumption applies here. The Legislature did not draft K.S.A. 2019 Supp. 21-6608(c)(8) on a clean slate. It added the maximum period language in that provision to replace a much different phrase: "the greatest maximum term provided by law for the crime." K.S.A. 1991 Supp. 21-4611(1). By focusing on a punishment "provided by law," the old statute more clearly referenced something other than the sentence imposed. Indeed, the only case to ever interpret that previous language held that it was a "plain and unambiguous" reference to the most prison time the judge could have imposed at sentencing. See *State v. Shaffer*, 20 Kan. App. 2d 347, 352-53, 887 P.3d 1165 (1995).

But in its 1992 session the Legislature replaced that clear language with the words now found in subsections (c)(6) and (c)(8): "the maximum period of the prison sentence that could be imposed." K.S.A. 2019 Supp. 21-6608; see L. 1992, ch. 239, § 245; K.S.A. 1992 Supp. 21-4611(c)(3). Unlike the old statute, the new version could at least plausibly be read as referencing the sentence imposed, especially because the new phrase presumably does not mean the same thing as the old one—again, the change in language signals a change in meaning. *Gordon*, 275 Kan. at 405. It is certainly possible other

6

evidence of legislative intent exists that could rebut this presumption, but the State offers none. It provides no reason to ignore the vastly different language used to measure both the cap and extensions since 1992.

This context supports Trevitt's interpretation. The Legislature replaced language that unambiguously referenced the State's reading—the maximum sentence the judge could have imposed—and replaced it with language that could support either party's interpretation. To give the Legislature's change any meaning, it must be read as no longer referring to the maximum sentence that the trial court could have imposed.

That conclusion is unaffected by the State's observation that a different statute uses different language than K.S.A. 2019 Supp. 21-6608 to refer to the sentence imposed. As the State points out, the probation revocation statute repeatedly mentions "the sentence imposed." K.S.A. 2015 Supp. 22-3716(b)(3)(B)(iii), (c)(1)(E), (c)(2), (c)(4). By contrast, the statutes which control the allowable length of probations, K.S.A. 2019 Supp. 21-6608(c)(6) and (c)(8), refer to "the prison sentence that could be imposed." The difference in language, the State reasons, must mean that the Legislature was not referring to the sentence imposed in K.S.A. 2019 Supp. 21-6608.

However, this distinction cuts both ways. Every provision the State cites for using "the sentence imposed" also references the sentence that "might originally have been imposed." See K.S.A. 2015 Supp. 22-3716(b)(3)(B)(iii), (c)(1)(E), (c)(2), (c)(4). That is a much clearer way to convey the State's interpretation, yet the Legislature did not use it in K.S.A. 2019 Supp. 21-6608 either. All the revocation statute shows, then, is that the Legislature has no uniform way to reference the sentence imposed or the sentence that could have been imposed. There is more than one way to refer to either.

The second reason Trevitt's interpretation prevails is the rule of lenity. Under that rule, courts must resolve ambiguity in a criminal statute in a defendant's favor. So if a

criminal statute is subject to two plausible interpretations, one of which subjects the defendant to lesser punishment, courts must adopt the more lenient reading. *Collins*, 303 Kan. at 476. So even if Trevitt's reading of subsection (c)(8) is not the most natural reading, it is at least a plausible one given the statutory context described above and would not "contravene the statute's plain meaning." 303 Kan. at 746. It is also more lenient, allowing up to a 64-month extension here compared with 86 months under the State's construction. So if any doubt remains about which meaning the Legislature intended, we must resolve that uncertainty in Trevitt's favor under the rule of lenity.

One more point needs to be addressed before applying Trevitt's interpretation to the probation extension he received. In construing subsection (c)(8), both parties ignore the phrase "inclusive of the original supervision term." Those words are key because they reduce the permissible extension length. Dictionary definitions show why this is true. "Inclusive of" means "including; taking into account." Webster's New World Dictionary 736 (5th ed. 2014). Applying that definition to K.S.A. 2019 Supp. 21-6608(c)(8) and the phrase's function is clear: "extensions may be made for" the longer of two periods, "including [or] taking into account" the original probation period. The only way the inclusive of the phrase makes sense is if it is subtractive—it reduces the permissible extension length by the length of initial probation period.

The district court imposed a 64-month prison sentence on Trevitt—which, to state the obvious, is longer than 60 months—before placing him on probation for 36 months. So the most the district court could extend probation past the original end date was 64 months ("the maximum period of the prison sentence that could be imposed") minus 36 months ("inclusive of the original probation period"). That leaves an allowable extension of Trevitt's probation at 28 months. The district court instead extended probation about 33 months past the original end date. Because the extension violated K.S.A. 2019 Supp. 21-6608(c)(8), we must reverse the district court and remand for an extension of no more than 28 months.

8

We reverse the district court's 36-month extension of Trevitt's probation and remand with directions that the district court may extend the probation up to 28 months beyond the date the probation was originally set to expire on January 20, 2020.

Reversed and remanded with directions.